In re the Marriage of Louise M. SAND-BERG, f.k.a. Louise M. Johnston, petitioner, Respondent,

v.

Raymond F. JOHNSTON, Jr., Appellant.

No. C1–87–1178.

Court of Appeals of Minnesota.

Nov. 17, 1987.

Barry Lazarus, Minneapolis, for respondent.

Cortlen G. Cloutier, Minneapolis, for appellant.

Heard, considered and decided by FORSBERG, P.J., LANSING and NIERENGARTEN, JJ.

## OPINION

LANSING, Judge.

This appeal is from a trial court judgment interpreting a provision of a dissolution decree which divided the proceeds of the sale of the homestead. We affirm in part and reverse in part.

## FACTS

Raymond Johnston and Louise Sandberg dissolved their marriage in December 1980. The amended judgment and decree, based on a stipulation between the parties, granted Sandberg possession and title to the homestead subject to Johnston's lien. The lien provision required Sandberg to place the property for sale within 30 days of remarriage and also provided for the distribution of the sale proceeds:

The proceeds from the sale of said property shall be distributed in the following manner and order:

a. The payment of all encumbrances.
b. The expenses of sale, including non-negotiable financing costs relating to the sale and realtor's commission.
c. The sum of $1,200.00 shall be paid to Petitioner which represents the cost of the air-conditioner and the new driveway which were capital improvements made to the homestead prior to the Judgment and Decree being entered herein.
d. The cost of any capital improvements over $500.00 made on the property subsequent to this Judgment and Decree, which have been approved in writing by both parties, shall be paid to the

party who paid for said capital improvement.
e. The amount of reduction in mortgage principal balance from the date of the temporary hearing to the date of sale shall be paid to the Petitioner.
f. Arrearages in child support, if any, shall be paid to Petitioner.
g. The balance shall be divided equally between the parties and this one-half shall represent the Respondent's lien against said property.

Sandberg remarried in 1983, and in March 1984 Johnston brought a motion to require Sandberg to place the homestead on the market. Sandberg moved for an interpretation of the decree and a determination of unpaid child support. The trial court ordered Sandberg to list the house for sale and also made a specific finding that Johnston had failed to make child support payments and ordered that all future unpaid child support be subtracted from Johnston's share of the net proceeds of the real estate sale.

The house was sold in June 1985 for $100,000, with net proceeds, after satisfying the encumbrances and expenses of the sale, of $65,160.86. In October the parties appeared before a family court referee on issues relating to the sale of the house and child support arrearages. Two weeks later they stipulated that Johnston would dismiss his appeal of the referee's order and, with the referee's approval, they amended the list of issues to be submitted for a one-day trial before a family court judge.

At that trial the parties stipulated that Johnston owed support arrearages of $10,260 and that Sandberg had paid $6,956.48 in mortgage principal reduction. They also stipulated that Sandberg had paid $1,760 for the replacement of the furnace, but Johnston disputed his liability for this capital improvement because Sandberg had failed to obtain his written approval in advance.

The trial court found that Sandberg was entitled to the furnace replacement cost, because she had made reasonable but unsuccessful efforts to obtain Johnston's approval, and Johnston had not provided her with his address or telephone number. The trial court also found that the amended decree was ambiguous because it did not make clear whether the capital improvements, mortgage reduction and child support should be disbursed to Sandberg be-

fore or after dividing the proceeds of the sale between Johnston and Sandberg. The court further found that the March 21, 1984, order had recognized the ambiguity and interpreted the amended judgment to require subtraction of the listed items after the division of the proceeds as a reimbursement to Sandberg from Johnston's share of the proceeds. Johnston appeals the inclusion of the furnace cost as an approved capital improvement and the trial court's interpretation of the ambiguity.

## ISSUE

Are the trial court's findings that the March 1984 order determined and interpreted an ambiguity in the amended judgment supported by the facts?

## ANALYSIS

Our review of the trial court's decision in this case is substantially hampered by the lack of post-trial motions and the absence of a transcript on appeal.

■ The trial court allowed Sandberg $1,760 as a capital expenditure for the furnace. Johnston bases his argument for disallowance on Sandberg's failure to obtain the written approval required in the decree. The trial court's finding that Johnston failed to provide her with his address or telephone number is not disputed. The court also found, and it is not disputed, that Sandberg made reasonable efforts to contact Johnston. It would be unreasonable to disallow the reimbursement for failure to comply with a precondition which Johnston frustrated. The trial court's exercise of discretion was appropriate and within its equitable powers. *See DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755, 758 (Minn.1981) (in dissolution proceedings courts are guided by equitable principles in determining parties' rights and liabilities).

■ The more difficult issue is whether the trial court properly deducted the capital expenditures, child support and mortgage payments after, rather than before, dividing the sale proceeds. The deductions total $20,176.48. If the subtraction occurs after the division, solely from Johnston's share, Johnston receives a final amount of $12,403.95 ($65,160.86 ÷ 2 − $20,176.48), and Sandberg receives $52,-756.91 ($65,160.86 ÷ 2 + $20,176.48). If, on the other hand, the deductions are made before the division, Johnston would receive $22,492.19 ($65,160.86 − $20,176.48 = $44,-984.38 ÷ 2), and Sandberg receives $42,-668.67 ($42,492.19 + $20,176.48). Depending on the method of division, Johnston's and Sandberg's shares will vary by $10,-088.24.

The amended judgment and decree provides for the "manner and order" of distributing the sale proceeds. The manner and order required the payment of all encumbrances, the payment of expenses of sale, the payment for capital improvements, the payment for mortgage principal reduction, the payment for child support arrearages and the balance to be equally divided. The trial court found that the March 1984 order had determined that there was an ambiguity in the order and interpreted the ambiguity by directing that the amount of child support arrearages be deducted directly from Johnston's share of the proceeds. The court further held that the capital improvements and mortgage principal reduction should be similarly subtracted; otherwise, Sandberg "would receive only one-half of amounts to which she is entitled as full reimbursement."

Although we agree that full and fair reimbursement of child support would require a deduction from Johnston's share only, we do not agree that full reimbursement for capital improvements and mortgage principal reduction require subtraction from Johnston's share after the division. This method is not only at odds with the method specified in the amended decree, but also skews the division unfairly. However, because the issue turns on the language of a stipulation incorporated into the amended decree, the guiding principles are legal, rather than equitable. *See Vanderleest v. Vanderleest*, 352 N.W.2d 54, 56 (Minn.Ct.App.1984) (the interpretation of a stipulation incorporated into the parties' dissolution decree is a question of law). Because the record on appeal does not include a transcript, we must accept the trial court's findings on factual issues.

Applying these standards to the circumstances of this case, we are able to find some basis for the trial court's determination that the issue of whether child support should be subtracted before or after the parties' division of the proceeds was raised and decided in the March 1984 order. The order expressly states that Johnston had not made the child support payments ordered in the amended decree and that it

was unlikely he would make future child support payments. The order is equally clear that the child support payments are to be withheld from Johnston's share of the net proceeds, rather than subtracted before the division between the parties. Although the order imposes this method only on future child support, on the state of this record we cannot find clear error in the trial judge's postulation.

However, the court's conclusion that the March 1984 order also resolved the method of payment for capital improvements and mortgage reduction is negated on the face of the order. There is no reference to capital improvements or mortgage reduction payments in the order. Consequently, the amended decree must govern. The decree is clear in specifying the sequence of the subtraction and division; the subtraction of capital improvements and mortgage reduction payments occurs before the division of the proceeds. This results in the following:

| | |
|---|---|
| Net proceeds of sale after payment of encumbrances and expenses of sale: | $65,160.86 |
| Minus capital improvements and mortgage reduction payments | − 9,916.48 |
| | $55,244.38 |
| Divided between Johnston and Sandberg | ÷ 2 |
| | $27,622.19 ea. |
| Johnston's share reduced by child support arrearages: | −10,260.00 |
| | $17,362.19 |
| Sandberg's share augmented by Johnston's child support arrearages: | $37,882.19 |

### DECISION

Trial court's order of subtraction of child support is affirmed. The holding on the furnace expenditure as a capital improvement is affirmed, but the order of subtraction of capital improvements and mortgage payments is reversed. Johnston is entitled to $17,362.19, and Sandberg is entitled to $37,882.19 of the net sale proceeds.

Affirmed in part and reversed in part.